c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JACQUELINE HORTON, individually, and on behalf of others similarly situated, Plaintiffs | CIVIL ACTION NO. 1:23-CV-00314 |
| VERSUS | JUDGE DOUGHTY |
| WILLIS-KNIGHTON MEDICAL CENTER, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (ECF No. 8) filed by Plaintiff Jacqueline Horton ("Horton"). Horton argues the Court lacks "federal officer" jurisdiction.[1] Defendant Willis-Knighton Medical Center ("Willis-Knighton") opposes. ECF No. 20.

Because the Court lacks subject matter jurisdiction, Horton's Motion to Remand (ECF No. 8) should be granted.

## I. Background

Horton, individually and on behalf of others similarly situated, filed a proposed class action in the Tenth Judicial District Court, Natchitoches Parish, Louisiana against Willis-Knighton. ECF No. 1-2. Horton alleges Willis-Knighton systemically

---

[1] It is undisputed that the Court lacks diversity jurisdiction or federal question jurisdiction. ECF Nos. 8, 20.

1

violated its customers' medical privacy rights by exposing highly sensitive personal information to third parties without their knowledge or consent. *Id.* at 2.

Willis-Knighton's Notice of Privacy Practices assures assures that Protected Health Information ("PHI") will not be used or disclosed for marketing purposes without written authorization. *Id.* Horton claims Willis-Knighton disclosed PHI to Facebook (and/or other third parties) without her knowledge, authorization, or consent. *Id.* Willis-Knighton allegedly used digital marketing and automatic re-routing tools embedded on its websites that intentionally redirected PHI to third parties. These third parties, according to Horton, exploited the information for advertising purposes. *Id.* at 2-3.

Horton alleges Facebook's "Meta Pixel" allows Facebook to track the personal data of individuals across a broad range of third-party websites. *Id.* at 12. Once a third party such as Willis-Knighton installs Meta Pixel on its website, the tracking tool automatically collects data about individuals, and shares that data with Facebook and advertisers. *Id.* at 12-14. In exchange for installing its Meta Pixel, Facebook provides website owners like Willis-Knighton with analytics about the ads they've placed on Facebook and Instagram, and with tools to target people who have visited their website. *Id.* at 14. Horton alleges the data is tracked and collected regardless of whether a user is logged into Facebook. *Id.* at 15.

Horton alleges Willis-Knighton discretely embedded the Meta Pixel tool on its website, resulting in the capture and disclosure of customers' PHI to Facebook. *Id.* at 18. This includes actions such as collecting the text of a button when scheduling a

doctor's appointment, the doctor's name, the search term, and medical conditions selected on drop-down menus. *Id.* at 19. This data is transmitted to Facebook through Meta Pixel as the patient activities occur in real time. *Id.* It is then obtained and used by Facebook and other parties for targeted advertising. *Id.* at 20. By correlating users' Facebook profiles that contain further details about a user, Facebook gains intimate personal profiles of patients without their consent. *Id.* Horton alleges the data sent includes that contained in patient searches for doctors or medical conditions, online patient questionnaires, and financial communications, among other personal and sensitive medical information. *Id.* at 21-22.

Horton claims Willis-Knighton knowingly disclosed information to Facebook and other advertisers to link its patients' PHI to their private identities and target them with advertising. *Id.* at 24. Horton alleges Willis-Knighton facilitated disclosure of her PHI, including sensitive medical information to Facebook (and/or other third parties), without her consent, when she entered information on Willis-Knighton's website. She continued to have her privacy violated when Willis-Knighton permitted Facebook and other companies to send her targeted advertising related to her medical condition. *Id.*

Specifically, Horton, an individual with a Facebook account, visited Willis-Knighton's website in 2022 at www.wkhs.com and entered data, including sensitive medical information such as details about her medical condition and doctor. *Id.* at 24-25. This included queries about a medical procedure of a sensitive nature. *Id.* at 25. Horton began receiving ads on her Facebook page related to her medical condition

and specifically tailored to her PHI. *Id.* She asserts Willis-Knighton knowingly allowed the collection and sharing of PHI for access to the Meta Pixel tool, betraying her privacy rights and that of putative class members. *Id.*[2]

Horton brings claims for violations of the Louisiana Wiretapping Act and for unjust enrichment. Specifically, Horton alleges Willis-Knighton's conduct violates Louisiana law, including La. R.S. 15:1303 (Interception and Disclosure of Wire, Electronic, or Oral Communications); La. R.S. 51:3074 (Protection of Personal Information; Disclosure upon Breach in the Security of Personal Information; and Notification Requirements); 48 La. Admin. Code Pt. 1, § 9319 (Patient Rights and Privacy); La. Admin. Code Pt. 1 § 505 (Confidentiality and Disclosure), as well as Louisiana Civil Code Articles 2315, 2316, and 2324(A). *Id.* at 3, 42-49. Horton further claims Willis-Knighton was unjustly enriched as a result of its collection, use, and disclosure of valuable sensitive medical information for its own gain. *Id.* at 48-49.

Horton seeks class certification under Louisiana Code of Civil Procedure Articles 591(B)(2) and/or (B)(3) on behalf of herself and others similarly situated." *Id.* at 40, 49. Horton also seeks an order enjoining Willis-Knighton from further unauthorized disclosures of personal information; awarding liquidated damages of $1,000 per violation; attorney's fees and costs; and other appropriate relief. *Id.* at 3, 49-50.

---

[2] After publication of the Markup's investigative article in June 2022, hospital systems across the United States began self-reporting data breaches arising from their installation of pixel technology on their websites. *Id.* at 36.

4

Willis-Knighton removed, invoking federal officer jurisdiction, 28 U.S.C. § 1442(a)(1). ECF Nos. 1, 2. Willis-Knighton states that in 2009, Congress enacted the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH" Act), which codified the Office of the National Coordinator ("ONC") and allocated funds for the health care system to adopt and meaningfully use health information technology ("IT") to improve health. *Id.* This includes Medicare incentive payments to encourage adoption and use of certified electronic health records ("EHRs"). *Id.* The Department of Health and Human Services ("DHHS") implemented the Meaningful Use regulations, now known as the Promoting Interoperability Program regulations. *Id.* Willis-Knighton alleges the federal government provided a firm directive to meet the requirements, including online patient portals. *Id.* And it alleges that those who do not meet the Meaningful Use requirements would not receive their full Medicare reimbursements. *Id.*

Willis-Knighton contends it is a "person" acting "pursuant to a federal officer's directions" to make patient portals available online to its patients and the other third parties who have legitimate access to their accounts. ECF No. 2 at 3-6. Willis-Knighton further contends it asserts two colorable federal defenses that satisfy the statute: preemption and the First Amendment. *Id.* at 10-12.

Horton now seeks remand (ECF No. 8), asserting lack of federal officer removal jurisdiction. Horton also asserts – and it is undisputed – that there is no diversity of citizenship under either 28 U.S.C. § 1332(a) or the Class Action Fairness Act, 28 U.S.C. § 1332(d). ECF No. 8 at 1-2.

## II. Law and Analysis

### A. Remand is required if the federal court lacks subject matter jurisdiction.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction is on the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Scarlott*, 771 F.3d at 887 (citing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013)). Any doubts as to removal must be construed against removal and in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), *cert. den.*, 530 U.S. 1229 (2000) (citing *Willy*, 855 F.2d at 1164).

The federal officer removal statute permits the United States, its agencies, its officers, and "any person acting under that officer" to remove a civil action to federal court. 28 U.S.C. § 1442(a)(1); *see also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007). Unlike other removal statutes, federal officer jurisdiction is not "narrow or limited." *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) (internal quotation marks and citation omitted).

6

To remove under §1442(a), a defendant must show (1) it has asserted a colorable federal defense; (2) it is a "person" within the meaning of the statute; (3) that has acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Port of Corpus Christi Auth. Of Nueces Cnty., Texas v. Port of Corpus Christi LP*, 57 F.4th 432, 436-438 (5th Cir. 2023); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

B. The Court lacks jurisdiction under the federal officer removal statute.

Section 1442 applies to any "private persons 'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Watson*, 551 U.S. at 151. It is undisputed that Willis-Knighton as a private entity could be considered a "person" within the meaning of the statute. ECF Nos. 8, 20. Thus, to find federal officer removal jurisdiction, the Court must find that Willis-Knighton acted pursuant to a federal officer's directions, that it asserts a colorable federal defense, and that the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *See Port of Corpus Christi Auth.*, 57 F.4th at 436-438; *Latiolais*, 951 F.3d at 296.

Horton argues that Willis-Knighton is neither an "officer" nor an "agency" of the United States and that it was not acting "under color of" any such office or agency. ECF No. 8 at 2. Horton further argues the Government does not "require" Willis-Knighton to disclose PHI to private companies like Facebook for advertising purposes. ECF No. 8-1 at 1. Horton further asserts that Willis-Knighton cannot show

7

that its purported federal defenses are colorable, as it has no First Amendment right to wiretap patients and disclose their PHI freely on the internet. Finally, Horton argues that no federal law preempts the Louisiana Wiretapping Act or claims of unjust enrichment. *Id.* at 2.

Horton does not assert claims for Willis-Knighton providing patient portals. Rather, Horton rather states a claim for Willis-Knighton's decision to embed tracking code (tracking pixels) on its websites. *Id.* at 6. Horton notes that since the filing of this lawsuit, Willis-Knighton has removed Meta Pixel from its websites. *Id.* at 7; ECF No. 8-3. Horton argues that nowhere in the HITECH Act and the Meaningful Use Program does it mention the government directing hospitals to use tracking pixels to intercept patient communications on their websites and disclose those communications to companies like Facebook for advertising. ECF No. 8-1 at 9.

Horton further argues that Willis-Knighton fails to show that it was assisting or carrying out a task or duty of a federal officer or agency sufficient to establish it was a "federal officer." *Id.* at 10-11. Horton contends that Willis-Knighton also fails to show any regulation or other evidence suggesting that it is the task or duty of a federal officer or agency to install patient portals on private healthcare providers' websites. *Id.* at 11.

Horton argues that laws prohibiting illicit wiretapping do not infringe on the First Amendment. *Id.* at 19. And Willis-Knighton fails to cite any evidence or authority to support its alleged preemption defense. *Id.* at 21. Horton therefore

claims Willis-Knighton fails to establish a colorable federal defense to support removal. *Id.*

Willis-Knighton responds that Horton's allegations regarding alleged privacy violations relate to their patient portal link. ECF No. 20 at 8. Willis-Knighton argues that it was assisting the federal government, acting under the color of federal law under *Watson*, in achieving the federal goal of making Willis-Knighton's patient portal available to its patients. *Id.* at 16. With the HITECH Act and Meaningful Use Program regulations, Congress codified a series of financial incentives for adoption and meaning use of certified EHR technology. *Id.* at 10. The federal government thus "encouraged" healthcare providers to make online patient portals available to their patients to meet the view, download, and transmit criteria. *Id.* at 12. Willis-Knighton contends the Patient Engagement Playbook issued by the ONC was a tool for "our mission" to adopt and adapt patient portals and that providers were told to "[u]se Playbook language on your website or Facebook page to let patients know how they can use the patient portal to participate in their care." *Id.*

Willis-Knighton argues that its actions were not mere compliance with the law but part of a paid partnership with the federal government. *Id.* at 18. It also admits that, in connection with recent guidance issued by the Department of Health and Human Services ("DHHS"), it has removed the Meta Pixel from its website. *Id.* But it does not agree with the guidance. *Id.*

Willis-Knighton contends that Horton undervalues the importance of the federal interest "to advance the connectivity of electronic health information and

9

interoperability of health information technology." *Id.* at 20. Willis-Knighton further asserts that the distinction between *Watson* and this case is that the federal government paid health care providers like Willis-Knighton to provide online access for their patients. *Id.* at 21.

Willis-Knighton argues that cases cited by Horton are inconsistent with the United States Fifth Circuit Court of Appeal's decision in *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914 (5th Cir. Mar. 20, 2023). *Id.* There, the Fifth Circuit allowed removal of state law claims under the federal officer removal statute of Medicare Advantage Organization subcontractor claims, based on the type of and character of assistance provided to the federal government in administering the Medicare plans under Medicare regulations. *Id.* (citing *Trinity Home Analysis*, 2023 WL 2573914 at *1, 3-4. It further argues courts have rejected Horton's argument that its participation in the Meaningful Use/Promoting Interoperability Program was "voluntary." *Id.* at 22.

Moreover, Willis-Knighton further contends it has a colorable federal defense to Horton's Louisiana state claims, including its basic First Amendment right to speech. *Id.* at 17, 23. Specifically, Willis-Knighton contends that Meta Pixel was able to help it "speak," through its publicly available website. *Id.* at 24. Willis-Knighton asserts Horton's state law claims raise substantial federal preemption concerns as it relates to the patient portal. *Id.* at 26 (citing *Doe, et al., v. UPMC*, 2020 WL 4381675, *7 (W.D. Pa. Jul. 31, 2020), *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020)).

10

Willis-Knighton argues the "causal" requirement of § 1442(a)(1) is met, as Horton's claims are directly related to the patient portal link. *Id.* at 27. It contends that the federal government wants individuals to have access to their health records online and Willis-Knighton is being sued precisely for provided that access. *Id.* It contends that Horton's allegations show the causal nexus between the Meaningful Use/Promoting Interoperability requirements and website analytical tools like the Meta Pixel. *Id.* at 28 (citing *UPMC*, 2020 WL 4381675, at *6; *ProMedica*, 2020 WL 7705627, at *3).

        1.    <u>Willis-Knighton fails to establish the "acting under" requirement for federal officer removal jurisdiction.</u>

To establish federal officer removal jurisdiction, Willis-Knighton must show that it "acted under" an officer or agency of the United States when it embedded Meta Pixel code on its patient portal. *See Latiolais*, 951 F.3d at 296 (holding that federal officer removal is not just for acts under a federal officer but also for those "relating to," or connected or associated with, those federal acts).[3] "While '[t]he words acting under are broad[ ]' and must be 'liberally construed,' their breadth is 'not limitless.'" *Box v. PetroTel, Inc.*, 33 F.4th 195, 199 (5th Cir. 2022) (quoting *Watson*, 551 U.S. at 147 (internal quotation marks omitted)).

However, "party does not come within the scope of the federal officer removal statute by mere compliance with federal regulations." *Port of Corpus Christi Auth.*,

---

[3] In *Latiolais*, the U.S. Navy hired a federal contractor to build and refurbish the Navy's own vessels. 951 F.3d at 289. The alleged negligence occurred during the performance of a federal contract; thus the private entity was found to be acting "pursuant to the directions of the U.S. Navy" and acting "under the color of federal office." *Id.* at 296.

11

57 F.4th at 436-438 (citing *Watson*, 551 U.S. at 151-52). "[P]recedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. And "the help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law." *Watson*, 551 U.S. at 152 (citations omitted).

Further, the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail does not suffice. *Id.* at 145. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not, alone, fall within the scope of the statutory phrase "acting under" a federal "official," even if the regulation is detailed and even if the private firm's activities are supervised and monitored. *Id.* at 153; see also *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580, 589 (5th Cir. 2022).

In *Watson*, the United States Supreme Court found there was no evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement between the government agency and industry association. *Id.* at 156. The Court explained that differences in the degree of regulatory detail or supervision cannot by themselves transform regulatory compliance into the kind of assistance that constitutes "actual under" a federal "officer." *Id.* at 157.

Likewise, "[b]eing 'subject to pervasive federal regulation alone is not sufficient to confer federal jurisdiction,' even when there was 'cooperation' between '[the private

12

actor] and the federal government.'" *Plaquemines Par. v. Chevron USA, Inc.,* 2022 WL 9914869, at *3 (5th Cir. Oct. 17, 2022), *cert. denied sub nom. Chevron USA, Inc. v. Plaquemines Par., Louisiana*, 143 S.Ct. 991 (2023) (quoting *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 235 (5th Cir. 2022)). The same is true of financial incentives. *Mohr v. Trustees of Univ. of Pennsylvania*, at *4 (E.D. Pa. Apr. 20, 2023) (citing *Watson*, 551 U.S. at 151).[4]

In *Mitchell*, the Fifth Circuit found that a nursing home's broad designation as critical infrastructure in the government's efforts to combat the COVID-19 pandemic did not federalize nursing home's operations, that permissive guidance and best practices published by federal agencies did not constitute mandatory direction, and that federal regulations alone, even if comprehensive and detailed, did not suffice under the federal officer removal statute. 28 F.4th at 580. The Fifth Circuit noted that the cited regulations "set forth aspirations and expectations, not mandates[] . . . and that 'verbiage denoting guidance, not control,' is insufficient to establish the kind of relationship necessary to invoke the statute." *Id.* at 590.

Here, Willis-Knighton claims that it was "acting under" a federal "directive." ECF No. 20 at 18. But notably, Willis-Knighton's only allegation pertaining to its use

---

[4] Courts in other circuits have found that implementation of the Meaningful Use program and health information technology infrastructure neither authorizes nor obligates the federal government to create such an infrastructure itself. *See Doe v. Hoag Mem'l Presbyterian Hosp.*, 2023 WL 3197716, at *3 (C.D. Cal. May 2, 2023); *see also Mohr*, 2023 WL 3044594, at *4; *Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *6 (E.D. Cal. Apr. 19, 2023); *Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023). "It cannot be said that the creation of a website and online patient portal fulfills a 'basic government task' that the federal government itself would otherwise be required to carry out." *BJC Health Sys.*, 2023 WL 369427, at *4. These cases are instructive here.

13

of Meta Pixel as it relates to federal officer removal is a reference that the federal government itself uses Meta Pixel. *Id.* at 13. Willis-Knighton fails to address how "'the charged conduct is connected or associated with an act pursuant to a federal officer's directions" – here, the use of Meta Pixel on its patient portal. *Port of Corpus Christi Auth.*, 57 F.4th at 436-438; *Latiolais*, 951 F.3d at 296. To the contrary, Willis-Knighton concedes it has removed Meta Pixel from its websites since the filing of this action. *Id.* at 7; ECF No. 8-3. Further, establishing a patient portal in the manner described does not transform Willis-Knighton's conduct into "acting under" a federal officer for the purposes of the federal officer removal statute. *See BJC*, 2023 WL 369427, at \*4 (noting that the Promoting Interoperability program does not require its voluntary participants to create online patient access to medical information to receive incentive payments, nor was BCJ required by the government to set up its website or online patient portal in a way to transmit patients' private data to third parties without their knowledge or consent).

Willis-Knighton has not shown the requirement of assisting or carrying out the duties of a federal officer, nor has it shown that it is an officer of the United States or of any agency of the United States. Willis-Knighton also fails to show it was under a contract (or sub-contract) with the federal government. *See Mohr*, 2023 WL 3044594, at \*5 (finding dispositive that the defendant didn't meet the "basic" scenario where a federal official enforces federal law or that defendant could be categorized as having a "special relationship" with the federal government like that of government contractors or Federal Community Defenders).

14

Willis-Knighton's voluntary participation in a program to receive incentive payments does not transform its private conduct into federal conduct. *See e.g., Beltran v. Cedars-Sinai Health System*, 2023 WL 3620740, at *3 (C.D. Cal. May 24, 2023) ("The directions Cedars-Sinai points to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure"); *see also BJC*, 2023 WL 369427, at *4 (rejecting BJC's argument that receipt of statutory incentive payments means that it is "acting under" a federal officer for purposes of the federal officer removal statute); *see also Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *5 (E.D. Cal. Apr. 19, 2023) ("receiving incentive payments for acting in a way that promotes a broad federal interest . . . is not the same as being contracted to carry out, or assist with, a basic governmental duty.") (quoting *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023)). And Willis-Knighton's "participation in the Meaningful Use Program does not establish a 'close relationship[ ] with the federal government' to show that Defendant was acting with or for a federal officer." *See Crouch*, 2023 WL 3007408, at *5.

Because Willis-Knighton did not "act[ ] pursuant to a federal officer's [or agency's] directions," the Court lacks federal officer jurisdiction.[5] *See* 28 U.S.C. § 1442(a)(1); *Watson*, 551 U.S. at 145.

### III. Conclusion

Because Willis-Knighton fails to establish federal officer removal jurisdiction;

---

[5] Given the lack of any federal officer or an entity "acting under" a federal officer, the Court need not further address Willis-Knighton's assertions concerning a colorable defense.

15

IT IS RECOMMENDED that Horton's Motion to Remand (Doc. 8) be GRANTED for lack of subject matter jurisdiction and that this case be REMANDED to the Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this __27th__ day of July 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE